**Rachel ELLERMAN, individually and as next friend of Carl H. Lytle, Jr., a minor, Plaintiffs-Appellants,**

**v.**

**Terrance Wayne KITE, individually and as agent for Anco Construction Company, Ltd., a Colorado corporation, and Yerby Banics, Defendants-Appellees.**

No. 78–216.

Colorado Court of Appeals, Div. I.

July 5, 1979.

Rehearing Denied Aug. 2, 1979.

Certiorari Granted Nov. 13, 1979.

Berger & Rothstein, P. C., David Berger, Commerce City, for plaintiffs-appellants.

Yegge, Hall & Evans, Eugene O. Daniels and Duncan W. Cameron, Denver, for defendants-appellees.

KELLY, Judge.

Rachel Ellerman, as next friend of Carl H. Lytle, Jr., a minor, brought an action against the defendants for damages for injuries suffered by the child in an automobile accident. The trial court entered summary judgment in favor of Anco Construction Company, Ltd., and a proper order under C.R.C.P. 54(b) was entered. Ellerman contends that there are genuine issues of material fact precluding the entry of summary judgment. We disagree, and therefore affirm.

The controversy between the parties revolves around the question whether Terrance Wayne Kite, who was driving the vehicle at the time of the accident, was acting as Anco's agent or within the scope of his employment by Anco. The uncontroverted facts in the record show that, at the time of the accident on Saturday, February 2, 1974, both Kite and Yerby Banics (whose true name appears to be Banks Yerby) were employees of Anco Construction Company, Ltd. Kite was employed as a plumber, and Yerby was a plumber's foreman. The truck being driven by Kite at the time of the accident was owned by Yerby or by Yerby's company, BYCO Plumbing Co., and the accident occurred while Kite was returning from a garage at which he obtained a Colorado safety inspection sticker for the vehicle.

Anco stated, in answers to interrogatories, that there was an oral agreement between Yerby and the president of Anco for Anco's use of the truck at a monthly rental of $272.73. The answers also indicate, however, that the monthly rental was first paid for the period from March 1, 1974, to April 1, 1974, and that, prior to that time, Yerby had been reimbursed by Anco only for actual expenses incurred in the operation and maintenance of the truck.

It is alleged in the complaint that Anco was Kite's employer on February 2, 1974, and that Kite was, at the time of the accident, "in the scope and course of Anco's business as its agent and servant." In support of its motion for summary judgment, Anco filed the affidavit of its president admitting the employment status of Kite, denying ownership of the vehicle involved in the accident, asserting that Kite was not required to report to work on Saturday, February 2, 1974, and that, on that date, Anco had no control or right of control over his actions. No counter-affidavit was filed by Ellerman. The trial court, in its order granting the motion for summary judgment, concluded that the affidavit was sufficient to show that Kite was not acting within the scope of his employment and was not performing any duties for Anco at the time of the accident.

Ellerman argues on appeal that the allegation in her complaint that Kite was acting in the scope of his employment and as agent for Anco is sufficient to raise genuine issues of material fact, when coupled with certain answers to her interrogatories from which, she says, inferences may be drawn to establish an agency relationship or that Kite was acting within the scope of his employment. The thrust of the argument is that, since it was necessary to obtain a safety inspection sticker on the vehicle in order to use it in Anco's business the succeeding Monday, Kite's actions in obtaining

the sticker were performed in the course of his employment, or as Anco's agent. We find these arguments to be without merit.

 Even if we assume that Kite's conduct in obtaining an inspection sticker for Yerby's truck would ultimately benefit Anco, these facts do not support the conclusion that Kite was acting as Anco's agent or within the scope of his employment by Anco when he obtained the inspection sticker. "[T]here is a marked distinction between an act done by a servant 'during his employment' and an act done within the 'scope of his employment.' The master has the unquestioned right to assign duties to his servant and to limit his authority, and no assumption of duties not so assigned will bring those duties within the scope of employment defined by the master." *Cooley v. Eskridge*, 125 Colo. 102, 241 P.2d 851 (1952).

Here, Anco's answers to interrogatories that Kite was employed as a plumber, and had no duties on February 2, 1974, a Saturday, was sufficient to establish that the acquisition of an inspection sticker for a truck owned by another employee, albeit used in Anco's business, was not within the scope of Kite's employment. Neither does the fact that Anco might ultimately benefit from Kite's actions in getting the sticker support the conclusion that Kite was acting as Anco's agent. There is nothing in this record to show that Anco was itself authorized to obtain an inspection sticker for Yerby's truck, and under these circumstances, it could not authorize an agent to do what it was without the power to do for itself. *See Cooley v. Eskridge, supra.*

Summary judgment is warranted when the pleadings, affidavits, and answers to interrogatories show that there is no genuine issue as to any material fact. *Abrahamsen v. Mountain States Telephone & Telegraph Co.*, 177 Colo. 422, 494 P.2d 1287 (1972). Here, the undisputed facts establish that Kite was acting neither as an agent nor within the scope of his employment for

Anco. Accordingly, the summary judgment was proper.

The judgment is affirmed.

SILVERSTEIN and PIERCE, JJ., concur.