Rachel LYTLE, formerly known as Rachel Ellerman, individually and as next friend of Carl H. Lytle, Jr., a Minor, Petitioners,

v.

Terrance Wayne KITE, individually and as agent for Anco Construction Company, Ltd., a Colorado corporation; and Yerby Banics, a/k/a Banks Yerby, Respondents.

No. 85SC483.

Supreme Court of Colorado, En Banc.

Nov. 3, 1986.

Rehearing Denied Dec. 8, 1986.

Berger & Rothstein, P.C., David Berger, Nathan M. Berger, Commerce City, for petitioners.

Downey & Gulley, P.C., Daniel W. Patterson, Denver, for respondent Terrance Wayne Kite.

Hall & Evans, Duncan W. Cameron, Brooke Wunnicke, Denver, for respondent Anco Const. Co., Ltd.

No appearance for respondent Banks Yerby.

VOLLACK, Justice.

We granted certiorari to review two issues concerning the unpublished opinion of the court of appeals in *Lytle v. Kite*, No. 83CA0537 (Oct. 3, 1985), which addressed the scope of an employee's employment when the pickup truck, which the employee was driving, struck a seven-year-old child who was crossing a highway. As a threshold matter, we first review the trial court's certification pursuant to C.R.C.P. 54(b) and hold that the certification was proper. With respect to the court of appeals' opinion, we reverse and remand the majority's holding that the district court erred in failing to direct a verdict for the employer. We believe the scope of employment issue contained questions of material fact and should have been submitted to the jury.

I.

On February 2, 1974, Carl H. Lytle, Jr., then seven years old, was injured by a truck driven by Terrance Wayne Kite as he attempted to run across Colorado Highway 2 in Adams County. On January 21, 1975, petitioner Rachel Lytle (known then as Rachel Ellerman) filed a personal injury action in Adams County District Court on her own behalf and as the next friend of her minor son, Carl H. Lytle, Jr., against Terrance Wayne Kite, Anco Construction Company, Ltd., and Banks Yerby. This suit was based on negligence against Kite, imputed negligence via *respondeat superior* against Anco, Kite's employer, and imputed negligence against Banks Yerby, the registered owner of the vehicle. Anco answered, denying that Kite was acting within the scope of employment at the time of the accident, and denying negligence by Kite. Neither Kite nor Yerby responded to the complaint. In 1978, the district court granted Anco's motion for summary judgment, ruling that Kite had not been acting within the scope of his employment with Anco when the accident occurred. The issue was certified for appeal pursuant to C.R.C.P. 54(b), and the court of appeals affirmed. *Ellerman v. Kite*, 626 P.2d 696 (Colo.App.1979). We granted certiorari review and reversed, holding that Anco failed to carry its burden of showing that there was no genuine issue as to any material fact bearing on whether Kite was acting within the scope of employment at the time of the accident. *Ellerman v. Kite*, 625 P.2d 1006 (Colo.1981).

A clerk's default was requested against Yerby and Kite on January 23, 1978. On the first day of trial, upon remand, January

17, 1983, an oral motion for default against Kite was granted by the trial court. However, during the trial, Anco filed a motion to set aside the default entered against Kite and to answer on behalf of Kite. The court deferred ruling on the motion.

Kite testified at Anco's trial that he used the pickup exclusively for the business of Anco to perform his duties as a plumber; that he had possession of the truck twenty-four hours a day, seven days a week, during his entire term of employment with Anco. He testified that Anco was not paying him for that Saturday afternoon, February 2, 1974, and that he was on his own time. However, he testified that he regularly gassed, serviced, maintained, and repaired the truck after regular working hours and on weekends. He also testified that he was regularly reimbursed for his expenses by Anco supervisor, Banks Yerby, and he received his Anco paycheck from Banks Yerby.

On the day of the accident, Kite drove the truck from his home to where it was to be serviced. The service consisted of the renewal of an inspection sticker, a front-end alignment and rotation of tires. The services were not emergency repairs, and the sticker renewal was not required until March 1, 1974.

The truck was owned by and registered to defendant Yerby. Prior to the time that Kite was employed as a plumber by Anco, he worked as a plumber for Banks Yerby. When Kite went to work for Anco, he used the same truck that he had previously used under Banks Yerby. However, Kite testified that he only did truck maintenance after he began working for Anco. It was upon the completion of the maintenance work done on February 2, 1974, while Kite was returning to his home, without deviation, that he struck Carl Lytle. In our earlier opinion of *Ellerman v. Kite,* 625 P.2d 1006, 1009 (Colo.1981), we stated, "Yerby was reimbursed by Anco for actual expenses associated with the operation and maintenance of four trucks including the truck involved in the accident."

At the close of trial, the district court directed a verdict for the petitioners on the scope of employment issue, instructing the jury that at the time of the accident, Kite was acting within the scope of his employment with Anco. The jury was further instructed that, for this reason, any act or omission by Kite was the act or omission of Anco.

The jury returned a verdict finding Anco 60% negligent and finding Carl Lytle contributorily negligent to the extent of 40%. Damages were set by the jury at $500,000 for Carl Lytle and $1,800 for Rachel Lytle.

Consistent with the verdict, the trial court entered judgment against Anco on January 25, 1983, for approximately $300,-000, plus interest. On February 14, the court granted Kite's motion to set aside the clerk's default entered against him and set a trial date for the claim against Kite. On March 29, 1983, the earlier default against Yerby was reduced to judgment in the amount of $600,000, plus interest.

After numerous motions, the district court certified the judgment against Anco as final pursuant to C.R.C.P. 54(b). The petitioners claimed the certification was proper. In granting certification, the court found "there [was] no just reason for delay in entering judgment against Anco Construction and in favor of plaintiffs." On July 12, 1983, Anco appealed.

In an unpublished opinion, the court of appeals reversed the trial court, addressing only the scope of employment issue. *Lytle v. Kite,* No. 83CA0537 (Oct. 3, 1985). The majority held that the district court erred in failing to direct a verdict for Anco on the scope of employment issue. It remanded with directions to dismiss the petitioners' complaint. The petitioners' case against Kite is being held in abeyance at the trial court level until there is a determination on this matter. We granted certiorari review to determine whether the judgment against Anco constituted a final, appealable judgment pursuant to C.R.C.P. 54(b), and to determine whether Kite was acting within the scope of his employment with Anco when the accident occurred.

## II.

■ While the petitioners originally claimed the court of appeals had jurisdiction to review the trial court's judgment by virtue of C.R.C.P. 54(b), they now contend that, because of the outstanding claim they have against Kite, the trial court erred in issuing a Rule 54(b) certification. Notwithstanding the petitioners' contentions as to the appropriateness of the trial court's Rule 54(b) certification, an appellate court's subject matter jurisdiction to entertain the appeal of a decision so certified is dependent upon the correctness of the certification. We are, therefore, obligated to raise and resolve the question of the legal sufficiency of the Rule 54(b) certification regardless of the earlier arguments by the parties. *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Harding Glass Co., Inc. v. Jones*, 640 P.2d 1123 (Colo.1982).

C.R.C.P. 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, *or when multiple parties are involved,* the court may direct the entry of a *final judgment* as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims, or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added.) This rule creates an exception to the general requirement that an entire case be resolved by a final judgment before an appeal is brought. *See*

§ 13–4–102(1), 6 C.R.S. (1973 & 1986 Supp.); C.A.R. 1(a).

In *Harding Glass,* we set forth a three-step process in which the trial court must engage to determine whether to issue a Rule 54(b) certification. First, the decision certified must be a ruling upon an entire claim for relief. Second, the decision certified must be final in the sense of an ultimate disposition of an individual claim. Third, the trial court must determine whether there is just reason for delay in entry of a final judgment on the claim. 640 P.2d at 1125.

While the question of whether there is "no just reason for delay," as required under the third prong, is committed to the trial court's sound discretion, *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980), its determinations that a "claim for relief" is the subject of the decision sought to be certified, as required under the first prong, and that the decision is "final," as required under the second prong, are not truly discretionary. *Harding Glass,* 640 P.2d at 1125. The trial court "cannot, in the exercise of its discretion, treat as 'final' that which is not 'final.'" 640 P.2d at 1125–26 (citing *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956) (footnote omitted)).

### A.

■ In *United States v. Bell,* 724 P.2d 631, 645 n. 19 (Colo.1986), we noted that the first prong of the *Harding Glass* requirements does not apply to a certified decision involving multiple parties. Here, there are two plaintiffs and three defendants. Nevertheless, the rights and liabilities of the parties regarding the claim wished to be appealed from must have been fully adjudicated. 6 *Moore's Federal Practice* ¶ 54.34 [2.–2] (2d ed. 1986); and *see* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2656 (1983). At the time of trial, a default had been entered as to Yerby and Kite. Anco moved to vacate the default as to Kite prior to the

trial. The trial court deferred ruling and proceeded to trial as to Anco only. After judgment was entered against Anco, the trial court vacated the default as to Kite.

■ In an action by a third party based on injuries caused by the negligence of a servant, the servant is not a necessary party to an action against the master, nor is the master a necessary party to an action against the servant. *Rieser v. District of Columbia*, 563 F.2d 462 (D.C.Cir.1977), *reh.*, 580 F.2d 647 (D.C.Cir.1978); 57 C.J.S. *Master and Servant* § 613 (1948); *see also Bauer v. Southwest Denver Mental Health Center*, 701 P.2d 114, 119 (Colo. App.1985). A claim by a third party based on negligence against a servant is distinct and separate from a claim based upon *respondeat superior* against the employer. Accordingly, the rights and liabilities of Anco were fully adjudicated.

### B.

■ We believe the decision certified was final in the sense of an ultimate disposition of an individual claim. "A 'final decision' generally is one which ends litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945). Upon remand from the court of appeals to determine whether to grant a Rule 54(b) certification, the trial court focused on the interest rate to be applied to the verdict and judgment and noted, "I don't think it could be any clearer that there was a final judgment on this [matter]...." The court set damages, thus, leaving nothing for the court to do but execute the judgment. *See International Controls Corp. v. Vesco*, 535 F.2d 742 (2d Cir.1976) (a judgment cannot be considered final as long as it leaves open the question of additional damages). The court satisfied the second prong that the decision certified was final in the sense of an ultimate disposition of an individual claim.

### C.

■ Finally, we address whether the trial court properly determined that there was no just reason for delay in the entry of a final judgment on the claim. 6 *Moore's Federal Practice* ¶ 54.34[2.–2] (2d ed. 1986). In deciding whether there are just reasons to delay an appeal of an individual final judgment, a district court must take into account the interests of judicial administration, as well as the equities involved. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). Here, because we have determined that the servant is not a necessary party to an action against the master, nor is the master a necessary party to an action against the servant, we do not believe the interrelationship of the claims hinders judicial administration by creating piecemeal appeals. Moreover, as to the equity interests, we note that the injury giving rise to the cause of action against the employer occurred in early 1974. The trial court judge granted the Rule 54(b) certification in August 1983. Nine years had elapsed, and interests of resolving a dispute of such duration weighed in favor of granting a Rule 54(b) certification.

Once the concerns of sound judicial administration have been met, the discretionary judgment of the district court should be given substantial deference, "for that court is 'the one most likely to be familiar with the case and with the justifiable reasons for delay.'" *Curtiss-Wright Corp.*, 446 U.S. at 10, 100 S.Ct. at 1466 (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)).

At the hearing to determine whether the trial court should grant a Rule 54(b) certification, the court stated that "[i]t determines there is no just reason for delay of final judgment as to Anco and expressly directs final judgment as to that defendant." None of the parties contested the Rule 54(b) certification, and the court did not elaborate further. While it would have been preferable for the court to have made specific findings as to why there was no

just reason for delaying entry of the final judgment on the claim, a fair reading of the record, coupled with the master-servant doctrine, prevents us from concluding that the trial court abused its discretion in determining that there was no just reason for delay and in its issuance of a Rule 54(b) certification.

### III.

We next address whether employee Kite was within the scope of his employment with Anco when he hit Carl Lytle. The trial court directed a verdict for petitioners on the scope of employment issue, instructing the jury that at the time of the accident, Kite was acting within the scope of his employment with Anco. The jury was further instructed that, for this reason, any act or omission by Kite was the act or omission of Anco. The court of appeals reversed and held that the trial court erred in failing to grant Anco's motion for a directed verdict. The majority emphasized that there was no evidence presented at trial to sustain the inference that because Yerby reimbursed Kite for the expenses of maintenance, Anco in turn reimbursed Yerby, rendering Kite's operation of the truck as "necessarily incidental" to his employment with Anco. The dissenting judge noted, however, that there were a number of facts and inferences which, when viewed in the light most favorable to the plaintiffs, warranted submission of the case to a jury. We agree with the dissent.

While no evidence was presented concerning the relationship between Anco and the truck, we do not believe the absence of this type of evidence is of dispositive significance. Whether an employee's conduct is within the scope of employment depends upon whether that conduct was "necessarily incidental" to his employment. *Hynes v. Donaldson*, 155 Colo. 456, 395 P.2d 221 (1964); *Cooley v. Eskridge*, 125 Colo. 102, 241 P.2d 851 (1952); *Russell v. First American Mortgage Co.*, 39 Colo.App. 360, 565 P.2d 972 (1977); Restatement (Second) of Agency § 229 comment a (1958). While no evidence at trial was presented that Anco

reimbursed Yerby for maintenance on the truck, evidence was presented that Kite and Yerby were Anco employees, that Yerby was Kite's supervisor, and that Yerby reimbursed Kite for the maintenance completed on the truck. Kite was expressly authorized by Anco to perform plumbing work. The truck owned by Yerby was used by Kite when Kite was an employee of Yerby. Kite continued to use the truck after he was employed by Anco in the performance of his work as a plumber for Anco. Kite had maintenance work done on the truck. Yerby reimbursed Kite for all maintenance performed on the truck only after both became Anco employees. From these facts, a jury could infer that Kite's maintenance of the pickup truck was "necessary and incidental" to Kite's employment. *See Hynes v. Donaldson*, 155 Colo. 456, 395 P.2d 221 (1964).

C.R.C.P. 50(a) allows the court to grant a motion for directed verdict when, viewing the evidence in a light most favorable to the party against whom the motion is directed, it determines that reasonable jurors could not disagree, and no evidence or inference has been received at trial upon which a verdict against the movant could be sustained. *Smith v. City and County of Denver*, 726 P.2d 1125 (Colo.1986).

In this case, the evidence was conflicting as to whether Kite was acting within the scope of his employment at the time of the accident. The facts do not support a directed verdict in either party's favor and, therefore, the issue should have been submitted to the jury. *See Marron v. Helmecke*, 100 Colo. 364, 67 P.2d 1034 (1937).

We reverse and remand for a new trial only on the scope of employment issue.