COLORADO COURT OF APPEALS 2017COA43

Court of Appeals No. 15CA1886
Yuma County District Court No. 12CV43
Honorable Michael K. Singer, Judge

_____

Stephen L. Allison and Barry R. Allison,

Plaintiffs-Appellants and Cross-Appellees,

v.

Frank Engel and Mary Engel,

Defendants-Appellees and Cross-Appellants.

_____

APPEAL AND CROSS-APPEAL DISMISSED

Division II
Opinion by JUDGE J. JONES
Dailey and Berger, JJ., concur

Announced April 6, 2017

_____

Haynes and Boone, LLP, John D. Fognani, Robert P. Thibault, Denver,
Colorado, for Plaintiffs-Appellants and Cross-Appellees

The Halliburton Law Firm, L.L.C., Samantha L. Halliburton, Denver, Colorado,
for Defendants-Appellees and Cross-Appellants

¶ 1      C.R.C.P. 54(b) allows a district court to enter a final judgment on one claim in a multiple claim case, thereby allowing an immediate appeal of that judgment, but only if certain requirements are met.  One of those requirements is that there is "no just reason for delay."  To give due force to the strong policy against piecemeal appeals, a district court must apply this requirement (as well as the others) with caution, and only where doing so is justified by reasons that clearly outweigh the concerns animating that policy.  We therefore hold that to satisfy the requirement of no just reason for delay, a district court must give reasons for certification showing that unless the judgment on the claim is certified as final, a party would experience some hardship or injustice through delay that could be alleviated only by an immediate appeal.

¶ 2      In this case, which pits neighboring landowners against each other, the district court certified a default judgment on one of several counterclaims — one for unjust enrichment — as final, purportedly to "avoid duplicative efforts" (presumably, multiple trials) and to get "a clear sense of direction" from the appellate court as to "the propriety of [the] . . . default judgment and related issues."  These reasons, considered individually or together, do not

1

show a danger of hardship or injustice to any party that could be alleviated only by allowing an immediate appeal. It follows that the district court abused its discretion in determining that there was no just reason for delay. It further follows that the district court improperly certified its default judgment on the unjust enrichment counterclaim as final, and therefore we lack jurisdiction over the appeal.

## I. Background

¶ 3     The history of this case is rather complicated, but bear with us.

¶ 4     The Allisons own parcels of property on either side of a parcel owned by the Engels. But the Allisons and Engels differ as to the precise boundaries of their neighboring parcels, and for a number of years they have had disagreements and run-ins primarily over a pair of water wells (one drilled in 1976 and the other drilled in 1995) located on one of the Allisons' parcels.

¶ 5     The Allisons filed a complaint against the Engels asserting two claims for trespass and one for a declaration of "the parties' respective rights, obligations, ownership, use and charges related to" the 1995 well. The trespass claims allege that the Engels built a

fence on the Allisons' land without their permission, and that the Engels have trespassed on the Allisons' other parcel, resulting in "destruction" of a portion of that parcel.

¶ 6    On July 25, 2013, the Engels filed both their answer to the complaint and counterclaims. They deny trespassing on either of the Allisons' parcels because, they allege, they've obtained both disputed tracts by adverse possession. In response to the Allisons' declaratory judgment claim, the Engels allege that (1) the previous owner of the Allisons' property granted them an easement to drill a water well, to install pipes delivering well water to their property, and for access to the well; (2) they drilled the well in 1976 and used it continually thereafter; (3) a replacement water well was drilled in 1995; (4) they installed water lines from the replacement well to the first well to enable them to get water from the replacement well; (5) the Allisons allowed others to attach water lines to the Engels' water lines; and (6) since 1976, they've paid all electric bills associated with use of the wells. They too ask for a declaration of the parties' rights and obligations relating to the water and the wells.

¶ 7    The Engels also assert several counterclaims. The first seeks a declaration quieting title of both disputed tracts. The second

3

alleges that the Allisons have been unjustly enriched by the Engels' payment of all electric bills associated with operation of the wells and of all costs to repair the wells. The third alleges intentional infliction of emotional distress resulting from confrontations between the parties. And the fourth asserts that Mr. Allison has created a "private nuisance" by interfering with the Engels' use of and access to the wells and by trespassing on their property.

¶ 8 Rather than replying to the Engels' counterclaims, the Allisons filed a motion for partial summary judgment on September 30, 2013, the last day of an extension the court had previously granted the Allisons to answer or otherwise respond to the counterclaims. The motion sought summary judgment on only two of the Engels' allegations — that they have a "senior water right" in the 1995 replacement well and that they have an easement for access to that well. The Allisons did not answer or otherwise respond to any other aspect of the Engels' counterclaims.

¶ 9 One week later, the Engels filed a motion for default judgment on their counterclaims based on the Allisons' failure to answer or otherwise respond except as in the motion for partial summary

4

judgment. By rule, the Allisons had until October 28, 2013, to respond to that motion. They didn't meet that deadline.

¶ 10 Consequently, the district court, noting the Allisons' failure to respond, granted the Engels' motion for default judgment in part. The court entered default judgment in the Engels' favor on all four of their counterclaims and awarded them damages of $32,114.05.[1] The court certified the default judgment as final under Rule 54(b), though no party had asked for such a certification.[2]

¶ 11 Later that same day, the Allisons filed their response to the motion for default judgment and a motion under C.R.C.P. 60 to set aside the default judgment. They asserted, incorrectly, that their response wasn't due until October 29, and so the court shouldn't have entered default judgment. Much procedural wrangling ensued.

¶ 12 As now relevant, the Engels responded to the Allisons' Rule 60 motion, arguing that the Allisons' counsel had simply miscalculated the response date and that the Allisons had been obligated to answer the counterclaims because they had addressed only two

---

[1] The court denied the Engels' request for an award of attorney fees.
[2] The court's order said only that there was "no just reason for delay."

5

"very narrow issues" relating to one of the counterclaims in their motion for partial summary judgment. Before filing a reply in support of their Rule 60 motion, the Allisons filed an answer to the counterclaims on November 7, 2013, which the Engels subsequently moved to strike. In their Rule 60 reply, the Allisons belatedly acknowledged that their counsel had miscalculated the due date for their response to the Engels' motion for default judgment. Nonetheless, they argued that they weren't required to answer or otherwise respond to the counterclaims because they had filed a dispositive motion — the aforementioned motion for partial summary judgment. The Engels moved to strike this new argument. In the midst of all this, the parties completed briefing on the Allisons' motion for partial summary judgment.

¶ 13 On December 30, 2013, the court entered an order setting aside the default judgment in part. The court ruled that the Allisons hadn't shown any excusable neglect for failing to timely answer the counterclaims. But because the motion for partial summary judgment could "fairly be read as contesting at least some of the underlying factual allegations concerning the water wells," the court said it had erred in awarding damages on the Engels'

intentional infliction of emotional distress and nuisance counterclaims. The court left intact the remainder of the default judgment.

¶ 14     After the Allisons filed additional motions under Rules 59 and 60 further attacking the default judgment, the court held a hearing on the Engels' quiet title counterclaim. (Before the hearing, the court granted the Allisons' motion for partial summary judgment only on the issue whether the Engels had a "senior water right.") Because the court concluded that there was a factual dispute as to whether the Engels had adversely possessed the two tracts at issue, it set aside the default judgment on the quiet title counterclaim.

¶ 15     The Allisons appealed. The Engels cross-appealed. This court ordered the parties to show cause why the appeal should not be dismissed for lack of a final, appealable order. The Allisons responded that there had been a proper Rule 54(b) certification; the Engels asserted (as they had in their notice of cross-appeal) that there wasn't a final, appealable order. A motions division of this court dismissed the appeal and cross-appeal.

¶ 16     Undeterred, the Allisons asked the district court for a new Rule 54(b) certification, arguing that the court's rulings on the post-

7

default judgment motions had "clarifi[ed]" the "scope" of the default judgment. They also argued that allowing an immediate appeal would

- provide the court and the parties, "in the shortest time, a binding decision that would provide a definite appellate answer as to the surviving applicability of the default judgment, in whole or part," thereby enabling the parties to focus on the claims and counterclaims to be tried and avoid the "distraction" of "unresolved appellate outcomes on key claims and issues";
- be "judicially efficient because it would simply displace a later appeal of the default judgment as part of an appeal of an entire case";
- somehow eliminate the prospect of a second trial that otherwise would have to occur in the event the default judgment were reversed in a later appeal; and
- increase the possibility of settlement by clearing up the "uncertainty about the ultimate outcome of the scope of the default judgment as to the [remaining] counterclaims."

8

¶ 17     The Engels opposed the motion.  They argued that because the

Allisons had not timely appealed from the first Rule 54(b)

certification, they should not get a second bite at the appellate

apple.  They also argued that an immediate appeal would result

merely in further unwarranted delay in resolving the case.

¶ 18     The court granted the Allisons' request.  It reasoned only that

certification would "avoid duplicative efforts," and that by allowing

the court of appeals to address the propriety of the default

judgment, "once trial is conducted concerning the merits, the

parties and the court will have a clear sense of direction in terms of

issues to be considered at that point in the case."

¶ 19     Once again, the Allisons appealed and the Engels cross-

appealed.  And once again, a motions division of this court ordered

the parties to show cause why the appeal shouldn't be dismissed for

lack of a final, appealable order.  The Allisons responded, but the

Engels (who had said in their notice of cross-appeal that the district

court should not have again certified the default judgment as final)

didn't.  The motions division dismissed the appeal and cross-appeal

as to the Engels' quiet title counterclaim for lack of finality, but it

said the appeal could proceed as to the default judgment on the unjust enrichment counterclaim.

¶ 20    The case was subsequently assigned to this division. After reading the parties' appellate briefs and the record, we became concerned about whether the district court had properly certified the default judgment on the unjust enrichment counterclaim as final under Rule 54(b). So we ordered the parties to file supplemental briefs addressing whether the unjust enrichment counterclaim is a separate claim for purposes of Rule 54(b) and whether there is no just reason for delay of an appeal pertaining solely to that counterclaim.

¶ 21    We've considered the parties' responses. Because we're not persuaded that there is "no just reason for delay," as that requirement is properly construed, we dismiss the appeal and cross-appeal.

## II.  Applicable Law and Standard of Review

¶ 22    We must determine independently our jurisdiction over an appeal, nostra sponte if necessary. *People v. S.X.G.*, 2012 CO 5, ¶ 9; *Meridian Ranch Metro. Dist. v. Colo. Ground Water Comm'n*, 240 P.3d 382, 385 (Colo. App. 2009). And we are not bound by a

motions division's determinations of that issue.  *First Comp Ins. v. Indus. Claim Appeals Office*, 252 P.3d 1221, 1222 n.1 (Colo. App. 2011); *FSDW, LLC v. First Nat'l Bank*, 94 P.3d 1260, 1262 (Colo. App. 2004).

¶ 23     Generally speaking, the court of appeals has jurisdiction only over appeals from final judgments.  § 13-4-102(1), C.R.S. 2016; C.A.R. 1(a); *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 & n.2 (Colo. 1982).  Rule 54(b), however, provides an exception to this rule.  *Harding Glass*, 640 P.2d at 1125, 1126.  Thus, our jurisdiction over an appeal from an order the district court has certified as final under Rule 54(b) depends on the correctness of that certification.  *E. Cherry Creek Valley Water & Sanitation Dist. v. Greeley Irrigation Co.*, 2015 CO 30M, ¶ 12; *Harding Glass*, 640 P.2d at 1126.

¶ 24     A certification under Rule 54(b) is correct only if (1) the decision certified is a ruling on an entire claim for relief; (2) the decision is final in that it ultimately disposes of the individual claim; and (3) the district court determines expressly that there is no just reason for delay in entering a final judgment on the claim. *E. Cherry Creek Valley Water & Sanitation Dist.*, ¶ 11; *Lytle v. Kite*,

11

728 P.2d 305, 308 (Colo. 1986).  The party seeking certification has the burden to establish that those requirements are satisfied. *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993).

¶ 25    We review de novo the legal sufficiency of a district court's Rule 54(b) certification.  *E. Cherry Creek Valley Water & Sanitation Dist.*, ¶ 12; *Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC*, 187 P.3d 1199, 1203 (Colo. App. 2008).  Similarly, we may "fully review[]" a district court's determinations as to the first two requirements because such determinations are "not truly discretionary." *Harding Glass*, 640 P.2d at 1125.  But we look at the district court's determination that there is no just reason for delay differently.  Because the district court is "most likely to be familiar with the case and with any justifiable reasons for delay," *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956),[3] we review a district court's determination of no just reason for delay

---

[3] Because the federal rule and C.R.C.P. 54(b) are virtually identical, "case law interpreting the federal rule is persuasive in analysis of the Colorado rule." *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 n.3 (Colo. 1982); *see also Warne v. Hall*, 2016 CO 50, ¶¶ 15-17 (discussing the desirability of applying Colorado procedural rules in substantial conformity with their federal counterparts).

only for an abuse of discretion. *Lytle*, 728 P.2d at 308, 309; *accord Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980); *Harding Glass*, 640 P.2d at 1125. A district court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous view of the law. *People v. Elmarr*, 2015 CO 53, ¶ 20.[4]

### III. Analysis

### A. Entire Claim for Relief

¶ 26    Determining whether a particular claim constitutes an entire claim for relief for Rule 54(b) purposes is not as easy as simply looking at the labels in a party's pleading. A pleading asserting a single legal right states but one claim, even if the claimant seeks multiple remedies for the violation of that right. *Harding Glass*, 640 P.2d at 1126. On the other hand, claims are separate "when more than one recovery is possible and when a judgment on one claim

---

[4] In *Harding Glass*, the court said that a court abuses its discretion in this context only if its decision was "clearly unreasonable." 640 P.2d at 1125 (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)). We don't believe that in doing so the court intended to adopt a standard different from that ordinarily articulated. After all, manifestly erroneous and clearly erroneous would appear to be the same. *See Carrillo v. People*, 974 P.2d 478, 485 (Colo. 1999) ("abuse of discretion," "clear abuse of discretion," and "gross abuse of discretion" all mean the same).

would not bar a judgment on the other claims." *Richmond Am. Homes*, 187 P.3d at 1203.

¶ 27    The parties in this case argue that, although there is some factual overlap in the proof of the unjust enrichment counterclaim and the other claims, the unjust enrichment counterclaim is an entire claim for relief because recovery on that claim does not depend on how any other claim is resolved.  More specifically, resolving the unjust enrichment counterclaim does not depend on who owns the disputed tracts, whether the Engels are guilty of trespass, or whether Mr. Allison's alleged behavior was tortious.

¶ 28    The problem with the parties' argument, however, is that each has asserted declaratory judgment claims (which remain pending) asking the court to determine the parties' respective rights in the wells, including who is responsible for costs associated with those wells.  So it may be that the unjust enrichment counterclaim is essentially subsumed in the declaratory judgment claims, even though those claims seek different remedies.  *Cf. Gerardi v. Pelullo*, 16 F.3d 1363, 1370 (3d Cir. 1994) (expressing doubt that unjust enrichment claim was a separate claim for Fed. R. Civ. P. 54(b)

purposes because it was arguably a "lesser-included aspect[]" of other claims).

¶ 29    We needn't decide this tricky issue, however, because we conclude that the third requirement for certification — that there is no just reason for delay — isn't met in this case, as discussed below.

## B.  Finality

¶ 30    Assuming the district court's default judgment on the unjust enrichment counterclaim is a ruling on an entire claim, there is no question that the decision is final.  The ruling determines both liability and damages.  *See Lytle*, 728 P.2d at 309 (a ruling determining liability and damages that left nothing for the court to do but execute on the judgment was final); *Harding Glass*, 640 P.2d at 1127 (observing that where the issue of damages is reserved, there is no final judgment).

## C.  No Just Reason for Delay

¶ 31    "In deciding whether there are just reasons to delay an appeal of an individual final judgment, a district court must take into account the interests of judicial administration, as well as the equities involved."  *Lytle*, 728 P.2d at 309; *accord Curtiss-Wright*,

15

446 U.S. at 8.[5]  Consideration of the needs of sound judicial administration is necessary to further the historic policy against piecemeal appeals, a policy Rule 54(b) was intended to preserve. *Curtiss-Wright*, 446 U.S. at 8; *Sears, Roebuck & Co.*, 351 U.S. at 438; *see Harding Glass*, 640 P.2d at 1127; *see also Linnebur v. Pub. Serv. Co. of Colo.*, 716 P.2d 1120, 1123 (Colo. 1986) ("To avoid piecemeal review, final judgments must meet the requirements of C.R.C.P. 54(b)."); 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3907 (2d ed. 1992) (discussing in depth the purposes of the final judgment rule).

¶ 32    Nonetheless, Rule 54(b) allows for an early appeal "to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim" that can result from modern rules of pleading allowing liberal joinder of claims and parties.  10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2654, at 30 (4th ed. 2014); *accord* 10 James Wm. Moore et al., *Moore's Federal Practice* § 54.21[1] (3d ed. 2015).  But given

---

[5] We acknowledge that our task is "not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." *Curtiss-Wright Corp.*, 446 U.S. at 10.

16

the strong policy against piecemeal appeals, district courts shouldn't make Rule 54(b) certifications routinely, even in multiclaim or multiparty cases. Nor should courts certify rulings as an accommodation to counsel. *Braswell Shipyards*, 2 F.3d at 1335; *Burlington N. R.R. Co. v. Bair*, 754 F.2d 799, 800 (8th Cir. 1985) (per curiam); *see Curtiss-Wright*, 446 U.S. at 10 ("Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely."). District courts should instead be reluctant to enter Rule 54(b) orders since the purpose of the rule is limited to avoiding undue hardship resulting from a delay in allowing an appeal. *Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001); *see also Gerardi*, 16 F.3d at 1373 ("[A] district court should be conservative in invoking Rule 54(b) . . . ."); *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) (Certification "must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.").

¶ 33 And so, in recognition of the need to limit certifications appropriately, the federal courts, in applying Fed. R. Civ. P. 54(b),

have held that to satisfy the requirement that there is no just reason for delay, a party seeking certification (or a court certifying a ruling on its own motion) must show that a party will suffer some hardship or injustice that can be alleviated only by an immediate appeal. *E.g.*, *Huggins v. FedEx Ground Package Sys., Inc.*, 566 F.3d 771, 774 (8th Cir. 2009); *Braswell*, 2 F.3d at 1335; *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992); *see also* 10 *Moore's Federal Practice* § 54.23[1][b], at 54-64; 10 *Federal Practice and Procedure* § 2659, at 104-05. Given that the Colorado judicial system shares the federal courts' disdain for piecemeal appeals, that standard also should govern certifications under Colorado's Rule 54(b).

¶ 34     We observe that although Colorado case law addressing the meaning of no just reason for delay is scant, what little there is appears to adhere substantially to the narrow approach taken by the federal courts. In *Lytle*, for example, the supreme court held that the district court didn't abuse its discretion in finding no just reason for delay where the claims against one party that were subject to the judgment certified weren't interrelated with the claims against the other party (in the sense that either party was a

18

necessary party to an action against the other) and nine years had elapsed between the injury giving rise to the claims and the entry of the certified judgment. 728 P.2d at 309.

¶ 35    In *Messler v. Phillips*, 867 P.2d 128 (Colo. App. 1993), the division found no abuse of discretion in certifying all of the plaintiff's claims against the defendant, despite pending cross-claims by the defendant against a third party, because the plaintiff was an elderly woman and her claims had been pending for several years. *Id.* at 132.

¶ 36    And in *Georgian Health Center, Inc. v. Colonial Painting, Inc.*, 738 P.2d 809 (Colo. App. 1987), the division found no abuse of discretion where there had been an earlier appeal of the dispute (involving a lessor and lessee), there was no dispute as to the amount that had been wrongfully paid to the lessor, and the lessor had wrongfully held the lessee's money for many years. *Id.* at 811.

¶ 37    We turn, then, to the facts of this case and ask whether the court's reasons for finding no just reason for delay show that the Allisons will suffer some hardship or injustice unless they are able to appeal now the default judgment on the Engels' unjust enrichment counterclaim. They don't.

¶ 38    As discussed, the district court gave two reasons for concluding that there was no just reason for delay: (1) "avoid[ing] duplicative efforts"[6] and (2) obtaining "a clear sense of direction in terms of the issues to be considered" at trial.

¶ 39    We construe the first reason as a concern that there would have to be a trial on the unjust enrichment counterclaim if the default judgment is reversed on appeal; an appellate decision on that judgment now would enable all claims to be tried in a single trial.  In other words, if there is no appeal of that judgment now, but only an appeal after all claims have been resolved, and the appellate court reverses the default judgment while affirming the judgments on the other claims, there will have to be a later trial on the unjust enrichment counterclaim alone.

¶ 40    But this reason is plainly insufficient to justify certification because the same could be said about any case involving multiple claims or parties as to which a dispositive ruling is entered on one claim, or as to one party, before trial.  *Huggins*, 566 F.3d at 774

---

[6] It isn't clear whether the court referred to avoiding duplicative efforts as a reason justifying immediate appeal.  But we'll assume that it did.  It also isn't clear if the court intended to give two reasons or merely one.  We'll assume that it intended two reasons.

(holding that the potential for multiple trials does not support certification); *Hogan*, 961 F.2d at 1025-26 (same). As the *Hogan* court observed, the appropriate course for a district court to take if it wants to minimize the likelihood of a retrial is to take care in granting judgment before trial, "not to ask for an interim opinion from the court of appeals, thereby forcing successive appellate panels to review the case." 961 F.2d at 1026.

¶ 41     We construe the second reason as a desire for guidance from this court on an issue as to which the district court is perhaps unsure. This reason appears to be closely related to the first in that the "direction" the district court seeks would enable it to best determine what claims need to be tried.

¶ 42     This reason is also plainly insufficient to justify certification. It's simply not a proper function of Rule 54(b) certification to assuage a district court's doubts about its decision or to provide "guidance" in the resolution of claims. *Taco John's of Huron, Inc. v. Bix Produce Co.*, 569 F.3d 401, 402 (8th Cir. 2009) ("We do not doubt that our resolution of this appeal would provide guidance to the parties and the court below. But the possibility that an early intervention might be helpful does not amount to the kind of

21

justification for exercising jurisdiction that our relevant cases require."); *see Hogan*, 961 F.2d at 1025-26 (district court's desire for appellate ruling on whether it had correctly assessed the state of the evidence did not justify certification); *Harding Glass*, 640 P.2d at 1127 (the appellate court is not "a type of 'advisory board'" (quoting *Cole v. Peterson Realty, Inc.*, 432 A.2d 752, 756 (Me. 1981))).

¶ 43     The Allisons nonetheless assert that there is no just reason for delay because "precluding [them] from having their day in court on the Engels' unjust enrichment counterclaim is simply inequitable under the circumstances here." But the "inequitable circumstances" they assert are limited to the purported error in entering default judgment. They do not cite any authority for the proposition that the merits of the certified decision matter in determining whether there is no just reason for delay. Nor have we found any.

¶ 44     For their part, the Engels (who previously asserted that the certification was improper), responded to our order to show cause by urging us to consider the appeal and cross-appeal because

briefing is complete.[7] But our jurisdiction depends on the correctness of the certification, and the stage of the proceeding at which jurisdiction is in question is irrelevant to that issue. We simply cannot exercise jurisdiction merely as a matter of convenience.

¶ 45 In sum, the district court didn't give legally sufficient reasons for finding that there is no just reason for delay. The court's reasons, considered singularly or together, don't show that any party will suffer hardship or injustice unless an immediate appeal of the default judgment on the single counterclaim is allowed. We therefore conclude that the district court abused its discretion, and that we lack jurisdiction.

IV. Conclusion

¶ 46 The appeal and cross-appeal are dismissed.

JUDGE DAILEY and JUDGE BERGER concur.

---

[7] At oral argument, however, the Engels' counsel took the position that the requirements for certification weren't satisfied.